et al., 2013-11-89. And we'll hear from Mr. Peslak, and you are ready. Good morning, Your Honors. If it pleases the Court, this is a design patent infringement case where the district court issued a written verbal claim construction, and this is a case where the design of the accused infringing device is so far removed from the drawings and limited scope of the patent itself that no reasonable jury could have found infringement here. But you've got two procedural problems. One is unitherm, and the other is the failure to appeal from the grant of the injunction. The unitherm case, we cited in our supplemental letter brief, the Biodex case, which is a prior opinion of this Court, where this is a case that was actually cited by the Supreme Court in the unitherm case, where this Court stated that you need a post-verdict decision by the district court to review sufficiency of the evidence, which can be either a deferred ruling on a pre-verdict motion or a decision on a post-verdict motion. In this case, we made a pre-verdict motion the district court reserved and decided the motion after the verdict was rendered. And if one looks at the transcript, the jury returned its verdict, and immediately the district court said she was going to decide the motion. I thought unitherm was quite clear that you can't just make a reservation of a pre-verdict motion for a directed verdict, and then a denial after the verdict was returned is not sufficient to save you in these circumstances. That scenario was specifically called out in unitherm and rejected, was it not? That wasn't the facts of unitherm. In unitherm, the pre-verdict motion was denied prior to the verdict and not renewed thereafter. I think the only, in this case, if I had stood up before the district court judge and said she was going to decide that motion and said I renew the motion, I mean, that would have saved, and I think that's exalting form over substance. In terms of the district court decision, I think the court can still reach the issues of infringement and damages based on the initial notice of appeal. Can I ask, let me go to the damages and the reasonable loyalty which are challenging here. If we were to agree with you that all of these licenses were not comparable and therefore should be kind of thrown out and not relied on, then how does the court or the jury go about constructing a reasonable loyalty? I believe that a burden that's placed on the plaintiff, there are several cases, I know at least one that are sort of bubbling up to this court. There was an Apple versus Motorola case where Judge missed an infringement case for failure to prove damages where he threw out the damages expert report, and that case is presently on appeal. It's a burden of proof that the plaintiff has to prove damages and to link the damage theory to the facts of the case. But the distinctions between the licenses that were put into evidence were called out to the jury. The jury knew. I mean, it's not like anybody was hiding the ball here. It's like, this is all we have. These are licenses and they're not exactly the same, and here are the differences, and therefore we think you can compute a reasonable loyalty in these circumstances for that. What's wrong with that? The licenses were never entered into evidence at trial. All the expert said was, I reviewed these third-party databases, came up with items that I believe are comparable, and he said, I had six of them, and they never entered into evidence. The one that he claims is the most comparable, he never reviewed the, no one at WI or he ever reviewed the patent that was the subject of that license agreement. And he was cross-examined to that effect, or am I confusing this? No, I did cross-examine him to that effect. And it was, the agreement itself was never executed. It bore a date prior to, the agreement itself bore a date nine months prior to the issuance of the patent. It was sheer speculation and guesswork whether it was comparable or not, and that was what he said was the most comparable. If you look at the... There are no existing licenses or no, so that doesn't mean automatically you don't get any damages, you're not entitled to a reasonable loyalty if you henceforth heretofore not license that, right? That's true, but there was an agreement in this case where WI had granted rights under the patent for no express consideration. And the expert just completely ignored that, never looked at it, never explained it, never explained what was going on. He just created a sort of alternate reality for the jury. He went out and found some license agreements and used them. And you had an opportunity to put forward one for cross-examination the deficiencies in what he was relying on and then put on your own case, right? Or respond. We did, we chose not to put an expert on. That's correct. But I think if we look at the cases, the Rescue Net case, the Unilat case, the Lucent case, court requires that the licenses be tied to the subject matter of the case, and that was never done here. We don't... As I said, the licenses were never admitted into evidence and there is no link. The only link is that they're both design patents. They're from different fields. He admitted that he never even looked at the patents. He thought it was a food container and it's not. That's not speculation and guesswork. It falls right into the rubric from the license cases. Quickly on infringement, district court did issue a verbal claim construction in this case. And there are at least five items from that claim construction that are not present in the carryout device. There's two pieces. The lid itself has a different side profile. In the patent, the lid comes up from the side and there's a lip and a recess on the raise and the center portion is recessed. In the patent, you don't see the dome in the side profile because there is a recess. That's part of the district court's claim construction. The shape of the dome itself is different in the patent. The shape of the dome is sort of a pill shape with large radiuses on the end. And in the carryout product, the dome itself has small radiuses and sharper corners. Another difference in the profile are these little pieces, the ribs that are stuck down in this channel. In our product, the appearance of these ribs is sort of a cutoff hockey stick where you have the blade. Doesn't our case law and design patents say you look at the design as a whole so you don't necessarily go through each discrete differences in the isolated ornamental features? You do. So given that we had a jury that considered this and they rendered a verdict, how is the arguments you're making sufficient to overcome that? Well, I think the question is why did the district court do the claim construction? The district court did a claim construction and said there are various items that are part of this design. And then at trial, we never heard about the claim construction from the plaintiff. How are those items met in this patent? And the court is correct that we look at the overall design and the jury decides whether or not there's infringement. But the one case we cited in our brief was Reed v. Portek where this is a question of whether or not the inferences were on functional versus ornamental features. And in that case, there was a finding of infringement that was overturned because there was no testimony indicating that the similarities were related to the ornamental features versus the functional features. I think there's an analogous situation here. It wasn't that the district court just said, you know, here's the, you know, we're going to construe this claim as what's shown and described in the drawings. The district court said these are the items that are part of the design and there was nothing presented to show that the accused device met the claim construction. Thank you, Your Honor. We will save the remainder of your time, Mr. Kessler. Mr. Gleason. Thank you, Your Honor. I'm going to jump to the infringement issue. What the jury had before it was sufficient to make a determination. It had the patent, which is the patent drawings. It had the carryout container, which was the infringing article. It had the WI container. It also had the testimony of Mr. Anthony, who was the expert who testified about the prior art, that there was no prior art that was like it. And at the end of the day, the jury also had the claim construction. And they took all that together. So they did have the evidence. That evidence alone, as Braun says, if you have the patent, the article and the drawing in a patent, that's sufficient. And that's what the jury had. They made their determinations. What the argument here is with regard to the differences is that it goes to the jury gave it consideration. It had it. Those things were pointed out. It's there's nothing more for a jury to do. There's nothing more evidence to give to a jury. What's your view on the Unitherm issue? I'm sorry? Your view on the Unitherm issue? I would agree that that that the without a rule, a post-verdict motion, a formal post-verdict motion, that that the defendants would be precluded. And I believe that Justice Thomas cited to the Johnson case, which was an incident, as I recall, where there was a determination, a post-verdict determination, denial of the Rule 58 application. But nonetheless, the court still says that you... Is it your view that this is a jurisdictional question or not? It, as I read the cases, they speak, it's somewhat of a jurisdictional question. It's a question of whether, and I wrote down under in my notes that jurisdictional. But the question is, is it something for the court? Is it an issue for the court, whether the court should consider the appeal? So I'm not sure whether that jurisdictional has a whole lot of meaning, but in a manner... One of the key things about jurisdictional issues is that can be raised any time. If this is not a jurisdictional issue, is there a waiver problem here? Oh, I believe there would be a waiver. It's a harsh, I believe it's a harsh rule, but it's the rule that the Supreme Court has announced, and that it precludes the court from considering the post-verdict, which on appeal is a post-verdict application, is what it amounts to. I think that the, excuse me, that the, you can't, for example, appeal anything more than was not, than was appeal under 58 in a post-verdict. So I think that the two of them are linked. And I think that this link makes a requirement that be renewed afterwards is part of the rules of federal procedure. Was there anything else, Your Honor? On the issue of staying on the infringement, Mr. Peslak indicated the Reed case, but the Reed case, that was a single, there was testimony that somebody just concluded that there was infringement. I'm not sure that in that case where they had, that the jury was able to see the portable loan screening device that was at issue. But again, in contrast to our case, the jury had all the evidence before it. With regard to reasonable royalties, Mr. Peslak made a reference to the fact that the expert did not include a litigation settlement issue that with W.Y. He explained that he didn't use the litigation settlement allowance by W.Y. because that's what it was. It was part of litigation. And in his experience, in the calculus of determining reasonable royalties, there's not an equal. These are comparable licenses, right? They're not comparable licenses. So what leeway do you have to put out an expert and say, here are the non-comparable licenses, and is it sufficient here because they took the lowest number? Or how does that make any sense? Well, it's the best, it's an imperfect system, but I'm not sure that there's an alternative. If neither of the parties licenses, you can't rely on what they would have done, their practices. So you try to go... There are cases in which there are no licenses put in. You have to make a reasonable, draw reasonable inferences in order to establish a reasonable royalty. How does that absolve you from having to deal only with comparable licenses? Well, it's the only way that... I'm not sure that there's another practical way to approach it, because if there's nothing else out there, then on the other side, you'd be arguing, well, you're being arbitrary in picking a number or arbitrary in what you're doing because there's nothing out there. You try to base it on... Well, you're equally subject to the arbitrary charge, are you not, if you're introducing licenses that are clearly distinguishable in the circumstances from the situation you have at hand? Judge, you're correct that you would be equally charged with that, but sometimes it's the lesser of two evils, to use a phrase, because otherwise, I'm not sure how you can get to it. Well, what would you have done if the judge had thrown out the expert and said, no, no, no, no, no, this is not this evidence? Well, we'd still be entitled to reasonable royalties, and I guess, I don't know if you said the judge threw it out, then we'd still be entitled to it, and I don't know what happens. I know in some instances on appeal where the reasonable royalty has been rejected, and it goes back to the court, and sometimes the judge makes the determination as to what the reasonable royalty is after a hearing, based upon the record that's already before it. So, but in some instances, because this is a patent case, there is a floor, at least, of the reasonable royalty, so you try to work with what you have, and going back, there is still going to be some royalty, if there's a finding of infringement, if the infringement is held up. So, I've scratched my head for years trying to figure out, to approach this, because there were a lot of different things we couldn't do. We couldn't go to a profits of WI, or the profits of the carryout defendants, because of certain things. Carryout defendants gave away containers. You couldn't calculate what their profits were. There would also have been an issue as to whether WI could show that they would have made particular sales. So, it was hard. So, we were left with the reasonable royalty option. And then, with that reasonable royalty option, we were left with trying to figure out and unravel what would be the best way to approach it. And Mr. Nelson looked at a database of what was out there. It wasn't like he said, I'm only going to look in my folders of past cases. There was an actual database, two databases that he relied on. So, he made some reasonable effort to try to find out and unravel what was there. And then, he had to sort out those agreements, because again, he was trying to get agreements around the same time. The time that would apply here would have been the day before the actual infringement. So, if there were agreements well before or well after it, he had to take those out of his calculus. So, it was his best attempt at trying to pull together what he had. I have nothing further to list, Your Honor. Does that have anything else? Thank you, Mr. Gleeson. Mr. Pislak has a little rebuttals on. Thank you. We will take the case under advisement. And in fact, we will carry out our constitutional duty and decide it. Thank you, Your Honor. All rise.